**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| YAHYI SHIHEED,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER<br>TINA HUGHES,<br>WARDEN KEITH ARNOLD,<br>TRISTAN McCROBIE,<br>*Correctional Officer II,*<br>LEON GOODRICH,<br>*Correctional Officer Sergeant,*<br>DAVID SPENCE, *Correctional Officer II,*<br>WESLEY APPEL, *Correctional Officer II,*<br>RANDALL OATES, *Correctional Officer II,*<br>and<br>JEREMY SNYDER, *Correctional Officer II,*<br><br>Defendants. | Civil Action No. 23-1862-TDC |

**MEMORANDUM OPINION**

Plaintiff Yahyi Shiheed, an inmate currently confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 against Correctional Officers Tina Hughes, Tristan McCrobie, Leon Goodrich, David Spence, Wesley Appel, Randall Oates, and Jeremy Snyder, as well as Warden Keith Arnold, in which he alleges that they failed to protect him from harm, in violation of his rights under the United States Constitution, while he was incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Despite being advised of his right to respond to the Motion, Shiheed has failed to do so. Having reviewed the pleadings and submitted materials, the

Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be GRANTED.

**BACKGROUND**

On March 28, 2025, the Court issued an order which, among other things, defined the operative Complaint as both the original Complaint, ECF No. 1, and the Amended Complaint, ECF No. 27. Defendants previously filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment which the Court denied without prejudice after Shiheed filed the Amended Complaint. Those dispositive motions were accompanied by exhibits, which Defendants reference and rely on in support of their now pending dispositive Motion.

In his pleadings, Shiheed alleges that on April 10, 2022 at approximately 9:05 p.m., Correctional Officer Tina Hughes saw him get stabbed multiple times by two other inmates in the outside recreation yard cages. Hughes did not "call the 10-10 code," which Shiheed asserts would have prevented his injuries. Compl. at 3, ECF No. 1. Shiheed further asserts that Correctional Officers McCrobie, Goodrich, Spence, Appel, Oates, and Snyder were present as escorts when he was stabbed, but none of them called "a code" to prevent the stabbing. Am. Compl. at 4–5, ECF No. 27. Shiheed states that he believes that these correctional officers knew the stabbing would take place and were deliberately indifferent to its occurrence. According to Shiheed, after the stabbing, a nurse refused to treat him, and he had to see another nurse the following morning in order to receive care. He seeks compensatory and punitive damages.

The parties do not dispute that Shiheed was stabbed by two inmates during the recreation period. On the date of the incident, Shiheed was housed in MAX-II security in the D Wing of NBCI's Housing Unit 2 ("HU2"). On the evening of the incident, Ramadan services were held from 7:00 p.m. to 8:30 p.m. The services were held in two separate locations: one group had

services on the south side of the NBCI compound, where general population is located, and another group held services on the north side, where the segregation and MAX II units are located. Hughes, Appel, McCrobie, Oates, and Snyder were assigned as Escort Relief Officers on this shift.

Recreation time ran later than normal that evening due to the Ramadan services and because of a slowly operating door in another housing unit. Shiheed was in the last outdoor recreation group of the evening and was in Yard 7 at the time of the altercation.

At approximately 8:46 p.m., Shiheed was stabbed by inmates Darryl Powell and Malik Shakur. Surveillance video footage does not show any of the named defendants in the vicinity of the recreation yard when the attack occurred. The video shows two inmates in a recreation cage who appear to attack another inmate, later identified as Shiheed. The attack appears to continue for approximately 90 seconds, after which Shiheed stood up and the other inmates walked away. Shiheed then walked around the recreation area, adjusting his clothing and sitting alone in the cage.

According to Spence, he was not assigned to monitor recreation at the time of the incident but instead was assigned as a Medical Rover. In that role, as seen in the video footage, he passed by the recreation yard shortly before the altercation. He asserts that he saw other officers monitoring recreation but did not see any disturbance. Spence has further stated that, prior to the attack, he had no advanced knowledge that Shiheed had any fear for his safety or was in any danger that day.

At Shiheed's administrative hearing on February 22, 2023, Hughes testified that "a total of four officers [were] watching the yards," and she "was the escort officer assigned to help the yard officer watch the yard for the night on the north side." 2/22/23 Hrg. Tr. at 19, Mot. Dismiss Ex. E, ECF No. 21-9. The yard officers took turns taking 15-minute walks up and down the yards. If an officer witnesses an altercation, the procedure is to call a 10-10 code and to make sure that the

area is secure before officers enter the area. Hughes testified that she did not witness the fight, and had she seen a fight, she would have called for assistance. During this time, no one, including Shiheed, attempted to alert the officers about an attack.

At approximately 9:10 p.m., Shiheed was escorted inside from the recreation yard. At that time, Hughes observed his injuries and alerted other officers to check Shiheed's recreation group. Hughes reviewed the video of the yard and saw Shakur, Powell, and Shiheed involved in an altercation. Later a weapon was found in the holding cell in which Shakur had been secured after the incident.

Powell and Shakur were detained on suspicion of their involvement in the altercation. Shiheed was searched for weapons or contraband and escorted to the HU2 medical room, where he was photographed in the presence of a nurse who attempted to evaluate him. According to the Serious Incident Report and Information Reports prepared after the incident, McCrobie, Goodrich, Spence, Appel, Oates, and Snyder responded after the assault to escort Shiheed and his suspected assailants to strip cages, holding cells, and medical evaluation rooms. Snyder assisted in securing Shiheed's handcuffs after he came in from recreation.

According to medical records, Shiheed refused treatment, declined to sign a Release of Responsibility form, and left the medical room. The nurse and Goodrich signed the Release of Responsibility form noting Shiheed's refusal of treatment and his refusal to sign the form. The following morning, a registered nurse who was conducting daily rounds on the segregation tier noticed that Shiheed had dried blood on his face and neck. Shiheed agreed to be escorted to the medical room where the nurse cleaned and dressed his wounds. At that time, Shiheed was not actively bleeding, but the nurse observed "[s]mall cuts and puncture wounds" in his upper arms and back, a swollen jaw, an open cut under his bruised right eye which she closed with steri-strips,

and abrasions on the knuckles of his left hand and his knees. Med. Records at 1, Opp'n First Mot. Dismiss Ex. B, ECF No. 14-3. At that time, Shiheed did not have trouble speaking or opening or closing his mouth.

All three inmates involved in the altercation were charged with rule infractions and were moved to administrative segregation, pending adjustment. Ultimately, the disciplinary charges filed against Shiheed were dismissed.

Shiheed filed a timely Administrative Remedy Procedure grievance ("ARP") on April 17, 2022 in which he claimed that Hughes had witnessed the altercation but failed to protect him. In response to the ARP, Hughes submitted an Information Report on May 12, 2022, in which she stated that she did not witness the altercation and saw Shiheed's injuries only after the fact. On May 16, 2022, Defendant Warden Keith Arnold dismissed the ARP as without merit because Hughes did not actually witness the assault. Shiheed filed an appeal of this decision to the Commissioner of Correction, who affirmed the Warden's decision. Shiheed appealed that decision to the Inmate Grievance Office, which referred the matter to the Maryland Office of Administrative Hearings. Ultimately, the Administrative Law Judge denied relief, in part based on the finding that there was no evidence that Hughes or any other correctional officers had advanced knowledge that the two inmates intended to attack Shiheed on the date of the incident. Prior to this incident, Shiheed had not reported either of his attackers, Powell or Shakur, as enemies.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that: (1) they are immune from suit in their official capacities under the Eleventh Amendment to the Constitution; (2) Shiheed has alleged no facts demonstrating personal involvement by Warden

Arnold; (3) Shiheed's claims are barred by the doctrines of *res judicata* and collateral estoppel; (4) Defendants are entitled to dismissal or summary judgment on the constitutional claims because Shiheed has failed to present sufficient allegations or evidence to support those claims; and (6) Defendants are entitled to qualified immunity.

## I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and attached exhibits for consideration. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving

party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) or another filing, explaining why, "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Shiheed has not opposed the Motion or asserted that he needs additional discovery in order to address the Motion. The Court therefore will construe the Motion as a Motion for Summary Judgment as to the arguments requiring consideration of the exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine"

only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Warden Arnold

As to Warden Arnold, Defendants argue that the claims against him must be dismissed because Shiheed makes no direct allegations against him. To the extent that Shiheed seeks to hold Warden Arnold responsible for the actions of his subordinates, the doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, a supervisor may be held liable under § 1983 for the actions of subordinates only upon a showing that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Shiheed has failed to plead or demonstrate sufficient facts showing that Warden Arnold is subject to supervisory liability. In particular, there is no allegation or evidence that Warden Arnold had any involvement in or knowledge of the alleged failure by the other defendants to protect Shiheed from an attack by fellow inmates or the alleged delay in securing medical care. Accordingly, all claims against Warden Arnold must be dismissed.

## III. Failure to Protect Claim

Where Shiheed was a convicted prisoner at the time of this incident, his claim based on a failure to protect him from the assault by other inmates is governed by the Eighth Amendment to the Constitution, which protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. Though an Eighth Amendment claim could arise from a failure to protect an inmate from an assault by another inmate, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor v. Pugh*, 817 F.3d 123, 127–28 (4th Cir. 2016). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of such an injury. *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). Subjectively, the prisoner must establish that the prison officials exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Such deliberate indifference exists if there was a substantial risk of serious harm that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the prison official in question had been exposed to that information but did not reasonably respond to it. *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Deliberate indifference also exists when prison officials were "aware that the plaintiff inmate face[d] a serious danger to his safety and they could avert the danger easily, yet they fail[ed] to do so." *Id.* Where prison officials respond reasonably to the risk, they are not liable even if the harm was not ultimately averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, although Shiheed suffered an objectively serious injury, the record does not support the conclusion that Defendants acted with deliberate or callous indifference to a specific known risk of harm. The record establishes that Shiheed was spontaneously attacked by two other inmates during the recreation period. Although he has alleged Defendants knew that the attack was about to take place, there is no evidentiary support for this claim. There is no evidence that anyone at NBCI, or any of the specific named Defendants, was aware in advance that Powell and Shakur presented any risk of harm to Shiheed. Defendants have provided uncontested evidence that neither assailant was listed among Shiheed's known enemies, and unlike in many successful failure-to-protect cases, there are no specific allegations, and no evidence, that Shiheed told any of the defendants that he feared for his safety in general or in specific relation to Powell and Shakur. *See, e.g., Cox*, 828 F.3d at 236–37 (affirming the denial of summary judgment on a failure-to-protect claim where the plaintiff had repeatedly informed prison officials that he was being threatened and requested that he or the potentially dangerous inmates be transferred).

Moreover, the evidence does not support the conclusion that any of Defendants were present at the time of the assault. Not only has Hughes denied that she witnessed the assault and stated that she became aware of the attack only when she observed the blood on Shiheed upon his removal from the recreation yard, but the surveillance video generally corroborates that account, because it provides no evidence that Hughes or any other defendant was present at the scene at the time of the assault. The only correctional officer seen in the video is Spence, who walked by the area prior to the initiation of the assault and was not present at the time of the attack. As to the other defendants, McCrobie, Goodrich, Appel, Oates, and Snyder, there is no evidence establishing that they saw the incident, only that they arrived on the scene to escort Shiheed and his assailants

from the area to holding cells and the medical unit. Thus, the record does not support the conclusion that Defendants were aware of a known risk of harm prior to the assault.

Under these circumstances, the Court finds that the record does not support the conclusion that Defendants were aware that Shiheed faced a "substantial risk of serious harm" from his attackers that they did not seek to address. *Cox*, 828 F.3d at 236 (quoting *Farmer*, 511 U.S. at 837). Accordingly, the Court finds that Shiheed cannot succeed on his Eighth Amendment failure-to-protect claim and will grant the Motion as to that claim.

**IV. Medical Care Claim**

As to Shiheed's claim that Defendants failed to provide him with adequate medical care, an Eighth Amendment claim relating to inadequate medical care requires that a plaintiff demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). "[I]t is not enough that an official should have known of a risk; he or

she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 835). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, the uncontroverted records demonstrate that Shiheed was taken to the medical unit immediately after the attack. According to Defendants, he refused medical treatment from the nurse, as documented on a Release of Responsibility form signed by Goodrich and the nurse on duty. The following morning, he was seen by a nurse during rounds who observed Shiheed's injuries and treated them by cleansing the wounds and applying steri-strips. Where Defendants, who are correctional officers, arranged to have Shiheed taken to the medical unit promptly, and he was seen by a nurse, the record does not support a claim of deliberate indifference to his medical needs by Defendants. *See Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (noting that, in relation to a claim of deliberate indifference to a serious medical need, a warden was entitled to rely upon the health care providers' expertise); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (stating that "[i]f a prisoner is under the care of medical experts ... , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Shelton v. Angelone*,

148 F. Supp. 2d 670, 679 (W.D. Va. 2001) (dismissing an Eighth Amendment claim of deliberate indifference to a serious medical need against security officers because the "nonmedical defendants were entitled to rely on" the judgment of a medical staff member as to whether the plaintiff's "injuries required treatment").

Even if there remains a factual dispute on whether Shiheed refused treatment or an argument that the nurse should have provided more treatment than was actually provided, Shiheed has neither alleged nor provided sufficient facts demonstrating that his condition was such that, following the nurse's assessment of his condition, the correctional officers who brought him to the medical unit would have been subjectively aware of a serious risk that required that they take additional action in relation to his medical care. The lack of evidence of such a known risk is illustrated by the fact that, upon examination by a nurse the next morning, only limited treatment was required. Where Shiheed has not provided sufficient evidence to establish that Defendants engaged in deliberate indifference to a serious medical need, the Motion will be granted as to this claim. In so ruling, the Court does not address whether Shiheed has any viable claims against the medical staff, which is the subject of a separate case. *See Shiheed v. Massalla,* No. SAG-22-1950 (D. Md.).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. A separate Order shall be issued.

Date: August 27, 2026

THEODORE D. CHUANG
United States District Judge